And we'll move on to the next argument. The next argument is Donrich Young v. Grand Canyon University. Edward Adam Webb is here for Young. Darren Bronson Dickerson is here for Grand Canyon. And, Mr. Webb, are you ready to proceed with your argument? Yes, Your Honor. You may. May it please the Court, good morning. This is Adam Webb of Webb, Clayson, and Lemon for the appellant, Donrich Young. Excuse me. Six years ago, Mr. Young enrolled in a program with Grand Canyon University to improve his professional standing. It was a leadership education program, a doctoral degree program. Little did he know that Grand Canyon was more about its multi-billion dollar valuation on Wall Street and profits, taking federal student loan funds and hitting straight to the bottom line. Luckily, the federal government and the Department of Education have been through this before with other for-profit colleges. And they have established rules that allow students, such as Mr. Young, to proceed in cases like this one, despite the fact that the school had an arbitration clause in its agreement. And that's what this case focuses in on and some of the very specific language of the regulations. In this instance, Corinthian College was a good example. After that was revealed as a fraudster institution, the federal government was stuck with over $40 million in student loans. They noted in adopting regulations in the Department of Education that if class actions had been allowed to proceed and had not been stymied by arbitration clauses in that instance of Corinthian Colleges, the federal government likely would have saved tens of millions of dollars. So they adopted the borrower defense regulations. And one of the very important provisions of that is that class actions on behalf of students that have received federal student loan funds cannot be stymied by an arbitration clause. Here, there's no dispute that Mr. Young received federal student loan funds and that the borrower defense regulations do apply. The only question is some very specific language of one provision of the clause. And I can only state that in very broad and expansive terms, the Department of Education was very clear in adopting the regulations that it was doing away with the idea of enforcing arbitration clauses in this type of case. However, there is one less than artful section of the regulations, and that's what we are forced to deal with here today. 34 CFR section 685.300 I1. And obviously this is in the papers, but since this is really the heart of our discussion, I will quote it to your honors. The borrower defense claim means a claim that is or could be asserted as a borrower defense as defined in section 685.222A5, including a claim other than one based on section 685.222C or D that may be asserted under 685.222B if reduced to judgment. The first clause leading up to the comma there is very, very expansive, and there is no dispute that if we were just talking about borrower defenses as defined in 222A5, we would be covered here. That's a very expansive definition that includes basically any provision of educational services for which a loan was provided. But we have the comma and the after clause there, and the question is what does that mean? We submit to the court that it's obvious that it's stating that it also includes that this general, very expansive definition under A5 also includes one other type of claim. However, the district court found that essentially that clause after the comma was to be read to say, you know, only including or to include only this claim and what is defined there in that clause. This is completely out of keeping with the common sense and plain understanding of this language. It also defies this court's determination in Bell South Telecommunications v. Town of Palm Beach that it is the intent that you look at first. Then you would look at how the regulator has interpreted the regulation. Then you would look at the legislative or regulatory history. And in each of those phases of the analysis here, it is resoundingly in favor of Mr. Young. First, the common sense understanding of what the term including means is to simply state that the broad category, the A5 category at the beginning of the rule, also includes what is therefore thereafter defined in the subclause. That simply relies on our understanding of the word including. We've cited some cases in our brief, but we all know what that means. Including does not mean including only or limited to or but only including. Those are the words that essentially the district court found should be implied here and that Grand Canyon is suggesting should be included. Frankly, if you were to take out the comma, the words including a claim, and just have the general cause and the general definition of A5 and then say other than one based on C and D, you would actually have what the district court has determined is the fair interpretation here. But that is not the plain language of the regulation. Can I ask you a quick question? I take it the fundamental debate here to be that the phrase including a claim other than, which is a weird, as you say, it's a weird phrase. It's a weird way of putting it. But that either means essentially including in addition to C and D, including in addition to breach of contract and misrep claims, or excluding breach of contract and misrep claims. Is that right? Do I have that basically right? Your position is that it means including in addition to those heartland claims. The defendant's position is that it means excluding breach of contract and misrep claims. Very close to that. They certainly are contesting that, that it excludes C and D, which is what it would say if it said other than ones based on C and D. It would be very simple to do that. But what it does say is it includes other than C and D, those that have been reduced to judgment under B. And so B is very expansive. B can be anything. It could be a former class action. It could be an attorney general action. Any ruling against the school at a prior time can be enforced by the student as a borrower defense claim. So it is simply saying that it doesn't have to be about breach of contract or misrepresentation. That's C and D. It can also be any other prior claim that was reduced to a judgment. And, you know, that's only fair under the language. But it's also, if this court was defined ambiguity, then you look to what the regulator has stated. And I think the best source of analysis of that is in the California Association of Private Post-Secondary Schools case versus DeVos. That is the subject of our 28-J letter from February of 2020. And that goes through a very detailed analysis of all the things. The thinking that went into the regulations, the various pronouncements within the regulatory framework, the comments that were received, the responses of the Department of Education. It's very comprehensive and it's very clear that there was no intent to exclude from this protection the very, very core focus of the regulations, which is breach of the contract and misrepresentations by the schools, these for-profit schools. Lastly, the legislative history is the same. And you can look at the proposal, the comments that were received, the responses, and all of that shows. So under the analysis that this court is to apply under Bells Vow Telecommunications, everything, all the criteria are in favor of Mr. Young. I would note, I know it's only a state court decision, but this exact issue just came up. And we certainly commend to your attention Judge Kasin's decision in the Ward case where she considered the exact same issue before you and determined in diametrically opposed analysis that that just didn't make any sense. What this federal district court did in this instance does not make any sense. And so we submit that it is a fairly straightforward question of the plain language of the regulation, but if the court does need to go forward or further than that, excuse me, under Bells Vow, everything is resoundingly in favor of Mr. Young being able to proceed with a class action lawsuit in this instance. I think we have your argument, Mr. Webb. Thank you. Thank you. And we'll hear from Mr. Dickerson. Good morning. May it please the court. My name is Duran Dickerson, and I represent GCU and GCE, the defendant's affilies in this matter. The court should affirm the decision below for two independent reasons. First, the district court properly held that the 2016 Department of Education regulations do not apply to plaintiff's claims in this lawsuit. Second, even if they did, those regulations do not and could not, consistent with the Federal Arbitration Act, invalidate the arbitration agreement between the parties. Some context is helpful. The borrower defense regulations, the regulations that we are discussing this morning, were implemented by the Department of Education in 1993 to permit student loan borrowers to raise defenses to paying back student loans to the federal government. And the regulations call these, quote, borrower defenses. In 2016, the department established a new federal standard. Counsel, this is Judge Anderson. I'm going to give you a little hint of my thinking and give you a chance to show me where I'm wrong. It seems to me that we ought to look at this awkward language in the section, the provision at issue, against the structure of the entire regulation, the regulatory scheme. The regulatory scheme in 685222, little b, c, and d, all of that in 685222, makes clear that contract claims and misrepresentation claims, c and d, are clearly defenses that in the federal administrative process, a student may defend against repayment of the loans. And b, 685222, little b, is an additional provision that in effect says any other claim other than contract and misrepresentation claims can also be used in defense during this administrative process if it is reduced to a judgment. When you look at it like that, your ice cream hypo is a little bit different than you present it. It is really an ice cream store that specializes in chocolate and vanilla ice creams, but then they have a new menu and the new menu says, we now also have local flavors other than chocolate and vanilla. So the customer asks for, I want a scoop of ice cream. Anyone will do the vanilla or the ice cream, or a scoop other than vanilla or ice cream will do. Why don't we look at the whole statutory framework to see that that is what is meant, especially as you are introducing it with the word including, which ordinarily does not mean excluding. So tell me why, looking at that overall structure, in addition to the including language, we don't have an ambiguity. And if we do have an ambiguity, I suggest that the legislative history of this, the regulatory history is absolutely clear that they intended the contract and misrepresentation claims as obviously included. And then in this section that is here, 300 i1, they are saying that the 685222b claims also are included, even if they are not reduced to a judgment, which gives meaning to the 685300i1. In other words, it is a little different from the previous defenses in that you don't have to reduce the claims other than contract and misrepresentation to a judgment. Why doesn't that work and suggest a ruling in favor of the plaintiff instead of in your favor? Thank you for that question, Judge Anderson. I think that the question hints at the problem with interpreting the definition in 685300 in the way that plaintiff appellant interprets it because there are two different processes contemplated by the regulations. There's the administrative process that you referred to, and then there is the potential for litigation in court, which is the process that is referred to by 685300. And the problem is that the regulations use two different terms and two different definitions. The way that plaintiff defines borrower defense claim in 685300, and as you did in your question asking whether that could be interpreted to mean including in addition to, the problem with that interpretation is that then the definition in 685300 means the exact same thing as the definition in 685222. You must not call it precisely what I said. I think the reasonable reading of 685300i1 is that the definition is a little bit different. The 685222b claims do not have to be reduced to a judgment in order to operate and apply in the 685300 definition. But that's also true with borrower defenses in 685222 broadly. No, no, no. In 685222b in the administrative process, a 222b claim is operative only if it is reduced to a judgment. In the 300 definition, it is operative even if it is not reduced to a judgment. Right, but 222 isn't limited to subsection b. The way this process works, and I'm working through these for another client now, student borrowers are permitted to file their borrower defenses with the Department of Education, and those defenses are not limited to subsection b. They include a5, they include c, and they include d. So student borrowers have an opportunity to limit their student loan exposure by asserting any of the claims, however they're defined in 222. So if the department really meant to make those definitions the same, then it would have said that instead of including the awkward language including a claim other than under c and d. This is Judge Newsom. Let me ask you a quick question. So you have your ice cream example. I've tried to fashion my own example, and I want to have you tell me where it goes wrong. I've tried to structure it precisely according to the regulatory language here. So here's my example. A tort claim means a claim alleging culpable conduct resulting in personal harm, including a claim other than one based on negligent or reckless conduct. Does that mean on your reading that a tort claim does not include negligent or reckless conduct? I think if the definition were stated in the way that you stated it, I think the plain language of that would exclude those claims. Really? I mean, really? Really? That is totally shocking to me. Yeah, I think the problem here is that we have this awkward language that is not often used this way. But when you read it, I think we have to construe the regulation according to the rules of statutory interpretation, One of which is the word including is typically a word of inclusion, as Judge Anderson says, not a word of exclusion. And there's nothing to prevent this language from meaning including in addition to. That's a perfectly plausible reading. That's the way my tort example reads. I mean, if the language had been drafted only slightly differently to say including claims other than those based on C and D, nobody would think this is ambiguous. And you're saying that just because it says including a claim other than instead of including claims other than, it's all different. That doesn't make any sense. I think that there's another reason that the definitions have to be different. Because if the department intended for them to be the same, they would have just written them the same. The way that they've written them means, in my estimation, that they have to mean something different by the definition they used in 300 as opposed to the definition that they used in 222. But what sense would it make? I mean, practically, what sense would it make to give with the right hand in A5 this very broad sort of definition of any omission, act or omission, that relates to making the loan and then immediately take away in C and D the sort of heartland claims, breach of contract and misrep. I mean, those are precisely the claims that borrowers are likely to make. Why would the Obama administration have wanted to take those away, to exclude those? I mean, is there a plausible reason why the Obama administration would have wanted to take those away? Sure, and I'm just speculating because the administration didn't explain why, but it could be because those claims hint at the educational process in a way that it makes sense for the department to resolve those claims through the borrower defense process. But I do think there's another issue that's important as well, and that's that the provisions that we're discussing are no longer in effect and the Department of Education no longer requires schools to agree not to require arbitration of any type of claim. Is it your position that the Trump administration regulations somehow apply retroactively here to exonerate you? Well, it's not so much that it's retroactive. It's that what these regulations do, they require schools to agree to certain provisions in their agreement with the department. So this is really an agreement between the schools and the department, and that agreement is no longer the operative agreement. So schools are not prohibited from enforcing pre-dispute arbitration agreements. Is that something, though, that we can take into consideration in deciding this case? Sure, because those are the regulations that are in effect as of today, and there's nothing in the regulation that indicates that they apply based on the date of the loan or the date the student enrolled. But I think perhaps the bigger point is even if the regulations do apply, they don't prohibit enforcement of an arbitration agreement. As I mentioned, they merely modify the conditions of participation in the department's direct loan program, and this point is confirmed by the implementing regulations that we referred to, by the department in its briefing in the CAPS litigation, and by the court's ruling in the CAPS litigation. The court in CAPS said very clearly that the regulations do not provide a basis for a student to resist a motion to compel arbitration because, of course, they couldn't consistent with the Federal Arbitration Act. The court went on to say that when confronted with any such agreement that is otherwise enforceable, courts must and will enforce the agreement. So my contention is that the 2016 regulations don't apply. I have an interpretation of them that perhaps the court doesn't share, but even if I'm wrong on those first two issues, the reality is that the plaintiff cannot point to the regulations to invalidate an otherwise enforceable agreement, and plaintiff has conceded in this case that he entered into an enforceable agreement. In any event, if we accept Grand Canyon's interpretation of the text of the regulation, isn't that inconsistent with the weight of authority? Would we create a circuit split with the District of Columbia Court of Appeals decision and California Association of Private Post-Secondary Schools v. DeVos? No, there wouldn't be a split at all. No other court has reached this issue. Can I finish answering your question? You may. No other court has reached this issue. The cap litigation, which was a district court, not a circuit, but in any event, this issue was not before the court. In the court's order and caps, they merely recited the definition of borrower defense, but they quoted $222,000 as opposed to $300,000. So they never even reached the issue. In fact, the language, including a claim other than, doesn't even appear in their decision. Judge Wilson, this is Judge Anderson. I have one question, but I see you have a question too, so you go ahead, but I would like to ask my question before you retire this counsel. You may go ahead, Judge Anderson. I don't see in your brief that you have argued that even if the regulation applies and even if it should be interpreted like the plaintiff asserts here that arbitration could never, even under all those circumstances, arbitration would have to be enforced. I don't see that argument in your brief to us. Your Honor, I believe the argument is in the brief and was certainly in the briefing before the district court, but I'd have to find exactly where it is in the current record. And I also am certain that it was included in our letter in response to Plaintiff Supplemental Authority. In fact, in our February 20th letter, in the third paragraph, we say that the CAPS Court explained that the institutions of higher education remain free to seek and vote pre-dispute class action waivers and arbitration agreements and when confronted with any such agreement that is otherwise enforceable, courts must and will enforce the agreement. Judge, he's answered my question. All right. I don't have any more questions. Thank you, Mr. Dickerson. Thank you. And Mr. Webb, you have reserved some time for rebuttal. Yes, thank you. A few brief points. First, I want to clarify, and I know it's very clear from the regulations themselves, and I believe it was essentially stipulated by the parties in the briefing, there have been changes to these regulations. The Trump administration has changed them, but it's very clear that the effective date for those changes is after July 1, 2020, when the effective date of those occurred, and it will apply to loans made after that date. So I don't want there to be any confusion that there's any real conflict about whether the regulation we've all been addressing throughout these arguments is the one that's at issue. It is the one that's at issue. Secondly, Judge Anderson is correct that the arguments, the sort of broader presumption in favor of arbitration arguments have not been made here in this appeal. However, I would point out that it is, you know, to me very clear, and I think the Capps case does a great job of analyzing it, that the federal purse can be protected by the Department of Education, and it can put limits on its borrowers. In this case, Grand Canyon University literally takes hundreds of millions of dollars in student loan funds every year from the federal government, and it is the most important responsibility of the Department of Education to safeguard those funds, and frankly, it's been doing a horrible job doing so, and Grand Canyon and many other for-profit schools have been robbing the U.S. taxpayer, which is really what cases like this boil down to. Not only are they protecting students who have been wronged, they're also protecting the federal taxpayer. And if there are no other questions, I have nothing further. I don't quite understand what you said. The argument he presented now, that oral argument, which is the first time I have heard it, that even if the regulations are construed as plaintiff urges, arbitration nevertheless could be enforced. You are saying what with respect to that argument? I am saying that certainly, since Concepcion came out from the U.S. Supreme Court close to 10 years ago now, there's obviously been a re-emphasized preference or favoritism for arbitration and enforcement of arbitration in the federal courts. However, no one has ever suggested that in entering agreements with the federal government, contractors or schools in this case cannot be forced to protect the federal purse. And in this instance, the federal government has decided that if you're going to take federal student loan funds, you must allow class action litigation to proceed to protect those federal funds because of instances that they highlighted in adopting those regulations where schools used arbitration clauses and were able to get away with fraud for years and years, costing the federal government tens of millions of dollars. So the answer is yes, if there was not a federal regulatory body involved here, if the student loans had not been obtained. This is an enforceable arbitration agreement between the school and Mr. Young, but everything in this case is always focused on the fact that that is a binding obligation. Federal student loans were obtained here and those rules were in effect. And so the general rule of thumb that might apply if Mr. Young had sued completely outside of the context of the federal rules, it might be a different analysis. But that analysis is not in play here because it was not briefed, it's not before the court, and we don't think it would be successful anyway. There's a detailed examination of that issue in the CAHPS decision that we have put before the court in our 28-J letter. And if the court has nothing further, I do not either. Thank you so much for your time. All right, thank you, Mr. Webb and Mr. Dickerson.